80 N.J. Super. 465 (1963)
194 A.2d 31
JOHN S. LINDSAY, JR., AND THELMA LINDSAY, HIS WIFE, PLAINTIFFS,
v.
THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, A NEW YORK CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 20, 1963.
*466 Mr. Eugene H. Gilmartin, attorney for plaintiffs.
Mr. Bertram M. Light, Jr. for defendant (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
G.H. BROWN, J.C.C. (temporarily assigned).
In this action plaintiffs John S. Lindsay, Jr. and Thelma Lindsay are husband and wife. They sue on a major medical expense policy issued by defendant to recover the cost of treating her illness. Additionally, they demand a declaratory judgment as to the validity of future claims.
Defendant denies liability on the ground that issuance of the policy was induced by fraud. In particular, it is alleged *467 that Mr. Lindsay, the named insured, deliberately misrepresented the physical condition of his wife (a "covered person") in answering questions propounded in the application, so that her adverse medical history was concealed. The same set of facts serves as the footing for five separate defenses. In a sixth defense it is alleged that the claim is based upon a sickness contracted before the policy was in force and therefore not covered by its terms. Defendant also counterclaims against the named insured for reimbursement, with costs and attorneys fees, for any moneys paid in the event of liability.
Now before the court is a motion by plaintiffs to strike, as insufficient in law, the six separate defenses, the counterclaim and all references to fraud in the answer. They contend that the claim cannot be contested for alleged fraud because of the following provision in the policy:
"Incontestable: (a) After this policy has been in force for a period of two years during the lifetime of any Covered Person, it shall become incontestable as to the statements contained in the application of such Covered Person."
The Uniform Individual Accident and Sickness Policy Provisions Law, as drafted in 1950 by the National Association of Insurance Commissioners, has now been adopted in nearly every American jurisdiction. It was enacted by New Jersey in 1951, N.J.S.A. 17:38-13.1 et seq. The clause above quoted is derived from N.J.S.A. 17:38-13.2(A) (2) (a).
It is required by statute that such policies shall include a provision by which the insurer must surrender certain defenses, based upon the application, after a fixed time has elapsed. Alternative clauses are offered. The following provision may be used:
"Time limit on certain defenses: (a) After three years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three-year period."
*468 Where a policy is non-cancellable (such as the one here involved) the insurer may, in lieu of the foregoing, stipulate as follows, after the caption "Incontestable":
"After this policy has been in force for a period of three years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application."
It was this "incontestable" provision which the defendant chose to write into the subject policy with changes favorable to the insured.
Plaintiffs invoke the clause. They say that the policy was issued on October 17, 1958, and since the claim is for medical expenses incurred in 1962 it is too late for defendant to contest the claim even if the application was fraudulent in fact (which, of course, plaintiffs deny).
Defendant argues that the provision is not so drastic. It says that after the policy has been in force for two years it does not become "incontestable"; it becomes "incontestable as to the statements contained in the application" according to the statutory language. This, the defendant urges, is a qualification which makes it evident that something less than total incontestability was intended. What is meant to be saved for contest, at least, are misstatements of the kind here alleged because they are expressly kept viable in the "time limit on certain defenses" provision, and the term "misstatements" is not used at all in the "incontestable" clause; if misstatements of this type were intended to be innocuous after three years by virtue of the "incontestable" provision, the concept of "misstatements" would have been reiterated therein; the new term "statements" was deliberately introduced to show that misstatements in the application would still be actionable. Thus defendant reasons out the argument.
This construction results in an emasculation of the "incontestable" provision. It makes its effect more narrow than the "time limit on certain defenses" clause because the latter ultimately protects the insured against misstatements of a *469 nonfraudulent character. The insured would never be immune from such misstatements if defendant's interpretation of the "incontestable" clause is correct.
If the word "statements" was purposely used in the "incontestable" provision to narrow the range of its effect, what would be accomplished for the benefit of the insurer or the insured? When the statements are correct, there is no reason for a contest. They are necessarily incontestable. It is only when they are incorrect that the insurer has an adversary interest. And if the statements are incorrect they are necessarily misstatements.
A reading of the "incontestable" provision without reference to the language used as to the "time limit for certain defenses" conveys the impression of absoluteness. Incontestability arises "as to the statements contained in the application." "The" statements must mean all of them. "Statements" can be true or false. A misstatement is a kind of statement. I cannot reach the conclusion that the co-called "incontestable" clause is anything less than absolute upon maturity.
The legislative history does not support the theory that significance inheres in the use of the variant terms.
The earliest complete draft of what ultimately became the uniform law is dated November 10, 1947. In its then form the "time limit on certain defenses" provision deprived the insurer of a defense based upon any "statement" in the application after three years. The "incontestable" clause, proposed at the same time, used the word "statements." A commentary published by the drafting committee referred to both provisions as effecting "The surrender by the insurer, after three years, of the right to base a defense upon misstatement in the application or upon prior origin of any condition." (Emphasis added) Evident at the outset, then, was an equation of the two concepts. No distinction between "statement" and "misstatement" could be said to have been meant at that time.
"Misstatements" first appears in the draft dated May 25, 1948. The term emerged in the language of the "time limit" *470 clause, as revised, to include a new exception for "fraudulent misstatements." Perhaps the change from "statements" to "misstatements" was made for consistency with the phrasing of the interpolation. In any case, the explanatory comments accompanying the uniform law as finally adopted by the Association have this to say, in part, about the law as it is now embodied in N.J.S.A. 17:38-13.1 et seq.:
"In addition to redrafting existing statutory provisions in the interest of clarity and greater liberality to policyholders, substantial additional protection is afforded policyholders and claimants through the introduction of the following important provisions not found in the present law (inter alia):
The surrender by the insurer, after three years, of the right to base a defense upon a misstatement in the application or upon prior origin of any condition. (Section 3(A)2)." (Emphasis added)
This comment refers to the whole text of subsection (A) (2) (a) of the New Jersey statute.
I therefore hold that plaintiffs must prevail against the second through the sixth of the separate defenses. They are hereby stricken from the answer.
It follows that defendant's counterclaim must be stricken. To allow defendant to be indemnified for fraud, after the period for contest has expired, would be to enable the insurer to do indirectly what it may not do directly. If it has contracted away its right to defend, it can retain no right to attack. Columbian Nat. Life Ins. Co. v. Wallerstein, 91 F.2d 351 (7 Cir. 1937), cert. denied 302 U.S. 755, 58 S.Ct. 283, 82 L.Ed. 584 (1937).
A further provision is contained in the subject policy:
"Incontestable: * * * (b) No claim for loss incurred with respect to any Covered Person after two years from the date such person becomes covered under this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of such loss had existed prior to the effective date of coverage of such person."
The foregoing is patterned after the requirement of N.J.S.A. 17:38-13.2(A) (2) (b). The policy clause is more advantageous *471 to the insured, however, since the bar against defense becomes effective in only two years.
"Sickness," in this policy, is defined as
"Sickness or disease contracted while this policy is in force and causing loss covered by this policy commencing while this policy is in force as to the person whose sickness is the basis of the claim."
The first separate defense asserts that there can be no liability because the sickness or disease mentioned in the complaint was contracted before the policy was in force and was therefore not covered by the definition just quoted.
Definition of a policy term cannot be allowed to alter the effect of a "required provision" in the uniform law. Read alone, subsection (A)(2)(b) of N.J.S.A. 17:38-13.2 expressly allows the present claim, even if founded on a disease or condition pre-existing the effective date of the policy, provided there was no specific exclusion. The policy contains no appropriate exclusion "by name or specific description." The full benefit of the "incontestable" clause must accrue to plaintiffs, unaffected by collateral provisions. The legislative history of the uniform law makes the intendment plain  the "additional protection" to policyholders was meant to effect:
"The surrender * * * of the right to base a defense upon a misstatement in the application or upon prior origin of any condition." (Explanatory comments, supra; emphasis added)
The first affirmative defense is therefore stricken.