### CENTRAL STATES LIFE INSURANCE COMPANY, Appellant,

v.

. Mrs. Margaret M. BYRNES, Appellee.

No 11143.

Court of Civil Appeals of Texas.

Austin.

Jan. 29, 1964.

Rehearing Denied Feb. 19, 1964.

Liddell, Austin, Dawson & Sapp, W. Robert Brown, Houston, for appellant.

Fred Parks and Donn C. Fullenweider, Houston, for appellee.

HUGHES, Justice.

This suit was brought against Central States Life Insurance Company, appellant, by Margaret Byrnes, widow of Galen

Byrnes, to recover on a life insurance policy (No. OL7854) issued to him by Community National Life Insurance Company [1] on August 12, 1954, in the amount of $25,000.00 and in which she was designated beneficiary. Mr. Byrnes died November 28, 1960. The policy sued on contained an incontestability clause reading, "This Policy will be incontestable after two years from its date of issue, except for non-payment of premium and except as to provisions and conditions relating to benefits in the event of disability and those granting additional insurance specifically against loss by accidental means."

It was stipulated between the parties herein that at the time of the death of Galen Byrnes, all premiums accrued and due under the policy in question were paid.

Appellant's liability under the policy is based on its assumption of liability thereon under a merger agreement, effective October 1, 1959, between it and the issuing Company.[2]

Trial was to a jury after which, and upon its verdict, judgment was rendered for Mrs. Byrnes against appellant for the face value of the policy sued on, 12% statutory penalty, $7500.00 attorneys' fees,[3] $2500.00 of which was contingent on appeal, and 6% interest from December 5, 1960, until paid.

It is our opinion that any defense based on the invalidity of this policy is precluded by force of the incontestable clause quoted above, however, in order to reflect the position of appellant and our holding relative thereto, we outline the facts and state the substance of appellant's points and contentions.

Appellant primarily contends that the policy was issued in violation of fiduciary duties which the deceased, Galen Byrnes, and appellee owed to the issuing Insurance Company.

When the policy in suit was issued Galen Byrnes was President, General Manager and Director and appellee was Secretary-Treasurer and a director of the issuing Company. The by-laws of such Company provided that its president and secretary should sign all policies issued. The instant policy was signed by Mr. and Mrs. Byrnes.

This policy was issued pursuant to a salary contract between Galen Byrnes and the Community National Life Insurance Company acting by and through Galen Byrnes, President, Paul I. Ross, Vice-President and M. M. Byrnes (appellee)

1. This Company and appellant were insurance companies organized under the laws of Texas.

2. "CENTRAL STATES
LIFE INSURANCE COMPANY
HOUSTON, TEXAS
ASSUMPTION CERTIFICATE
To be attached to and made a
part of Policy No. OL7854
of the
COMMUNITY NATIONAL LIFE
INSURANCE COMPANY

Effective October 1, 1959, the above designated policy issued by the Community National Life Insurance Company of Houston, Texas, is hereby assumed by Central States Life Insurance Company of Houston, Texas, in accordance with the terms of a Merger and Consolidation Agreement which Agreement has been approved by the Commissioner of Insurance for the State of Texas, as provided by the Texas Insurance Code.

Central States Life Insurance Company does hereby agree to fulfill all obligations and pay all benefits in the same manner and to the same extent as provided in said policy. The premiums of this policy will remain the same.

IN WITNESS WHEREOF the Central States Life Insurance Company has caused this Assumption Certificate to be executed at its Home Office as of the first day of October, 1959.

CENTRAL STATES LIFE
INSURANCE COMPANY
By: /s/ John W. Collis
President

Attest:
/s/ W. J. Noad.
Secretary"

3. See Art. 3.62, Texas Insurance Code, V.A.C.S.

Secretary-Treasurer. The execution of such contract was authorized by the by-laws of the Insurance Company and the minutes of the Company reflect that an executive committee was named to execute "salary contracts." The salary contract of Mr. Byrnes provided, in part:

"5. PROTECTION During the life of this Contract, the Company shall furnish personal insurance on the life of Galen Byrnes in the minimum amount of $25,000.-00, with adequate increasing amounts as Company earnings and growth warrants.

"6. IRREVOCABILITY (a) In the event the Company merges, sells, or changes to any other form or name, this Contract must follow and be fully honored with such change.

"(b) This Contract shall remain in full force and effect, irrespective of any Directorship or Officership that Galen Byrnes may or may not hold."

All premiums on this policy were paid by the Company prior to its merger with the appellant. As part of the agreement of the two Insurance Companies to merge, a mutual release was authorized and executed, October 22, 1959, between Central States Life Insurance Company and Galen Byrnes and others in consideration of the cancellation of certain stock and the right to purchase additional stock. We quote from such release:

"NOW, THEREFORE, in consideration of the premises and other good and valuable considerations hereinabove recited, Community National Life Insurance Company and Central States Life Insurance Company, and Central States Life Insurance Company, the surviving corporation, having been duly authorized by its Board of Directors in accordance with the resolution hereto attached, and in pursuance thereto, does release the said Galen Byrnes, E. F. Lingle and Weldon A. Steinmann, individually and collectively, from any and all claims of every nature whatsoever by reason of their actions as an organizer, original incorporator, stockholder officer or director of Community National Life Insurance Company and/or Community National Corporation.

"For the same consideration, Galen Byrnes, E. F. Lingle and Weldon A. Steinmann, individually and collectively, do hereby release Community National Life Insurance Company and Central States Life Insurance Company and Central States Life Insurance Company, the surviving corporation, of any and all claims of every nature whatsoever by reason of being an organizer, original incorporator, stockholder or director or officer of Community National Life Insurance Company and/or Community National Corporation."

Following the execution of this release appellant, in August 1960, sent a notice to Mr. Byrnes that the annual premium of $1,082.00 was due on the policy in suit. Such premium was paid by Mr. Byrnes on September 6, 1960, and it has since been exclusively retained by appellant.

On the trial of this case, appellant made no offer to return this premium, or any of the premiums paid on this policy under the salary contract, nor did it offer to pay the cash surrender value of such policy.

There is in the record an agreement, dated April 12, 1954, between Community National Life Insurance Company and Republic National Life Insurance Company by which, in general, Community National agreed to cede to Republic and Republic agreed to automatically accept for reinsurance all amounts of life insurance in excess of the amount regularly retained by Community National, but not exceeding

400% of such retention. The amount of such retention was originally $2500.00, and was later raised to $5000.00.

Subsequent to the issuance of the policy in suit, application was made to Republic by Mr. Byrnes for reinsurance of its amount in excess of $2500.00. On August 24, 1954, Republic advised Mr. Byrnes by wire and letter that it would not reinsure. This wire and letter were not found in the records of either Community National or appellant.

There are, however, records of these two Companies in evidence from which it could have been ascertained by anyone who had access to them, which would include the officers of the Company, that no reinsurance had been issued by Republic on the Byrnes policy. We do not discuss these records in detail but we refer specifically to the statements sent by Republic to appellant or its predecessor for its portion of the premiums due on policies reinsured by it. These statements did *not* include any claim for premiums for reinsuring any portion of the Byrnes policy. This knowledge that the Byrnes policy was not reinsured is reinforced, as to appellant, by its retention of the whole cash premium received by it in 1960.

The Trial Court submitted many issues to the jury, and we will give the substance of its findings.

Galen Byrnes was at the time the policy sued on was issued was insurable; at such time Mr. Byrnes believed he was insurable; Mrs. Byrnes at such time believed her husband to be insurable. When appellant sent notice of policy premium due to Mr. Byrnes its records reflected that such policy was not reinsured with Republic; that at such time the officers and employees of appellant knew such policy was not reinsured with Republic; that appellant waived its right to contend that the Byrnes policy was unenforceable because of its non-reinsurance with Republic by accepting the 1960 premium, and that by such action it ratified such policy.

That Mr. Byrnes did not fail to disclose to the other Directors of Community National that his policy was not reinsured; that Mrs. Byrnes did fail to make such disclosure; that Mr. Byrnes did not remove the letter and telegram from Republic rejecting reinsurance from the files of Community National; that Mrs. Byrnes did not so remove such exhibits. Mr. Byrnes did not fail to disclose to Officers and Directors of appellant that his policy was not reinsured.

That the life underwriting precedures of Republic and Community National were the same; that a part of the underwriting procedure of Community National was that it would reinsure all life insurance policies in excess of $2500.00; that as a part of such procedure Community National would not issue a policy where such excess was rejected by Republic for reinsurance; that the Byrnes policy was issued in violation of these procedures; that the Directors of Community National never had actual knowledge that Republic had declined to reinsure the Byrnes policy.

The jury also made findings as to attoreys' fees which we will notice infra.

Appellant has points to the effect that many of these findings are without any support in the evidence or that they are against the overwhelming weight and preponderance of the evidence. Since we believe the incontestable clause is applicable in this case we pretermit a discussion of these evidentiary points.

■ The two year incontestable provision in the Byrnes policy was mandatorily required by Art. 3.44, Vol. 14 V.A.C.S., Insurance Code, which provides, in part, that no policy of life insurance may be issued or delivered in this State by a life insurance company organized under the laws of this State which does not contain a provision,

"That the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums; * * *"

The premiums on the Byrnes policy were fully paid; more than two years elapsed from the date of such policy before any contest of it was made. Therefore, the policy is, ipso facto, incontestable.

This statutory provision has been a part of insurance law since 1909 (Acts 1909, p. 192). It has been before our Courts many times. Its application is inflexible. In American National Insurance Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, the Court stated:

"The policy before us departs from subdivision 3 in that it allows the insurer to contest same for fraud, after two years, though all premiums have been paid. It was the obvious purpose of subdivision 3 to prescribe two years as a maximum period of limitation, after which no defense should be allowed to defeat payment of the policy, except nonpayment of premiums, or violations of conditions relative to naval or military services during war. The subdivision allows the insuring company to fix a period of time, not to exceed two years, during which it may make fully available to itself all the legal consequences of fraud which ought to be discovered through the exercise of proper diligence; but, after the expiration of the period fixed, the subdivision eliminates all defenses, save those specially mentioned."

In Howard v. Missouri State Life Ins. Co., 289 S.W. 114, San Antonio Civil Appeals, writ ref. 3-2-27, the Court in reference to an incontestable period of one year as provided in the policy stated:

" * * * that after the lapse of the first year the insurer is prohibited from contesting the validity of the policy, from abrogating it, from avoid-ing it, from escaping the liability fixed by its terms upon the insurer; that after the lapse of that period the insurer will be bound by its terms against every defense."

Peculiarly applicable here is the case of Kansas Life Insurance Company v. First Bank of Truscott, 124 Tex. 409, 78 S.W. 2d 584, opinion by Smedley, Judge, writing for the Commission of Appeals. There it was held that after expiration of the incontestable period a life insurance company could not defeat suit on a policy on the ground of fraud notwithstanding its agent was a participant in the fraud. We quote from that case:

"The Supreme Court of Tennessee, in construing an incontestable clause in similar language to that in the policy in this case said:

" 'The meaning of the provision is that, if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity. No reasonable construction can be placed upon such provisions other than that the company reserves to itself the right to ascertain all the facts and matters material to its risk and the validity of its contract, for one year; and if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence. * * * It is said, however, that fraud appearing in the origin of the contract must, as in any other case, render it null and void from the beginning. It is true that fraud vitiates all agreements and undertakings based upon it, and they may be set aside at the instance of the party defrauded. So, in this case, fraud in obtaining the policy would vitiate at the option and upon the motion of the party defrauded; but, under the provision in question, the party must within the year exercise his right to repudiate and rescind it. The effect

of this agreement not to contest is to put the company in the attitude of being unable to set up any fraud or false swearing in obtaining the policy, or any other defense to it, save the one excepted, so far as its original validity is concerned.' Clement v. New York Life Insurance Company, 101 Tenn., 22, 46 S.W., 561, 562, 42 L.R.A., 247.

"The fraud alleged in the answer of plaintiff in error is urged as a defense to defeat the payment of the policy, and further the allegations go to the original validity of the policy, presenting as grounds of invalidity facts existing at the time the policy was issued. The facts alleged therefore are defensive matters which, by the terms of the incontestable clause as construed in the authorities cited, the insurer has agreed shall not be urged, after the expiration of the period named, to defeat payment of the policy.

"Plaintiff in error concedes the validity of the statute and of the incontestable clause contained in the policy, and does not question the general rule that the incontestable clause, after the expiration of the prescribed period, eliminates the defense of fraud in connection with the application for the policy. It contends, however, that because Mrs. Clark, in procuring the issuance of the policy, represented both parties to the contract without the knowledge of plaintiff in error and acted against the interest of plaintiff in error, her principal, and in the interest of the other party, and participated in a fraud upon her principal, no contract binding upon plaintiff in error was ever made.

"[2] The fault in this contention is that perfidy of an agent in negotiating a contract for his principal does not render the contract absolutely void, but makes it voidable at the option of the principal."

 Citation of other authorities would be mere supererogation. It is our opinion that the evidence in this case does not make issuable any fact which could be offered as a defense to this suit.

 Appellant's only complaint regarding the allowance of attorneys' fees is in regard to the contingent allowance of $2500.00 in the event of an appeal. The jury found that such amount was reasonable in the event of an appeal. This point is overruled upon the authority of American Bankers Insurance Co. v. McDonald, 369 S.W.2d 688, Austin Civil Appeals, writ dism., w. o. j. See also Grimes v. Robitaille, 288 S.W.2d 211, Galveston Civ.App., writ ref., n. r. e.

The judgment of the Trial Court is affirmed.

Affirmed.