James **STRAWBRIDGE**, Plaintiff,

v.

**NEW YORK LIFE INSURANCE COMPANY**, Defendant.

Civ. No. 79–1180.

United States District Court, D. New Jersey.

Oct. 16, 1980.

Amended Dec. 1, 1980.

On Motion for Reconsideration March 3, 1981.

Dean Anglin, East Brunswick, N. J., for plaintiff.

Richard T. Philips, Newark, N. J., for defendant.

## OPINION

ACKERMAN, District Judge.

This diversity case involves a dispute over a life insurance policy. The plaintiff, James Strawbridge, is a field insurance underwriter employed by the defendant, New York Life Insurance Co. In the course of his employment, Mr. Strawbridge sold a New York Life Insurance Co. policy insuring the life of his father–in–law, John Henry Loch. At the time of Mr. Loch's death, Mr. Strawbridge was named as the beneficiary of the life insurance policy on Mr. Loch's life. New York Life refused Mr. Strawbridge's claim as beneficiary for payment on the policy, principally due to its belief that Mr. Strawbridge participated in the making of fraudulent misrepresentations on the application for the policy. Mr. Strawbridge then filed this suit, in Superior Court of New Jersey, demanding payment of the death benefit. The defendant removed the case to federal court. In its answer, New York Life pleaded, *inter alia*, a defense of fraud and also set forth a counterclaim against Mr. Strawbridge for his alleged breach of the field underwriter's contract with New York Life and for his alleged breach of fiduciary duties owed to New York Life.

The plaintiff has now moved for summary judgment on the complaint and on the counterclaim. In support of this motion, Mr. Strawbridge principally relies upon the policy's statutorily mandated incontestability clause. See N.J.S.A. 17B:25–4. This clause bars the insurance company from raising any defenses to a claim for death benefits, other than non–payment of premiums, after the policy has been in force during the lifetime of the insured for a period of one year from its date of issue. In the present case, it is uncontested that Mr. Loch, the named insured, died after the requisite period had passed. I have concluded, for the reasons set forth below, that the plaintiff is entitled to summary judgment on his complaint due to the operation of the incontestability clause. I have also concluded, however, that nothing in either the clause itself or the New Jersey statute prevents the insurance company from proceeding with its counterclaim. I have, therefore, denied the plaintiff's motion for summary judgment as to the counterclaim.

In opposition to the plaintiff's motion, the defendant has made two arguments. The first of these arguments might be characterized as a shield to the plaintiff's complaint, while the second argument serves as a sword in support of the counterclaim. I have analyzed the defendant's arguments separately but in both cases I have given New York Life the benefit of every factual inference that can reasonably be drawn in its favor. Fed.R.Civ.P. 56(c); *Janek v. Celebrezze*, 336 F.2d 828, 834 (3d Cir. 1964).

In its first argument, New York Life contends that there was no contract in existence and therefore the clause does not apply. According to New York Life it was not the named insured, John Henry Loch, who applied and paid for the insurance policy, but the plaintiff, Loch's son–in–law and the beneficiary on the policy, and that therefore the named insured never entered into a contract with the defendant. The defendant argues that because the contract never existed, the incontestability clause could not become operative.

Whatever persuasive force this argument has as an abstract proposition, it is New Jersey law that counts. In *Prudential Insurance Co. of America v. Connallon*, 108 N.J.Eq. 316, 154 A. 729 (E.&A.1931), the Court of Errors and Appeals, which was at that time New Jersey's highest court, rejected the same abstract argument with the following language:

The substance of the complainant's first contention is that the incontestability

clause was intended to be conditional, that is, conditional upon the policy taking effect. Under such construction, the clause is deceptive, meaningless and ineffectual to the insured because although it purports to state that the policy shall be incontestable for any reason after one year, it shall nevertheless be contestable at any time on the ground herein urged. If the policy is to be regarded as never in force so as to permit the insurer to show that the insured was not in sound health at its date, although the insured's death may not occur until many years after the policy date, then an incontestability clause is of but little value and is a deceptive inducement to an insured to accept it.

*Id.* at 318, 154 A. 729 (quoting the unpublished opinion of the Chancellor below). *See also Drews v. Metropolitan Life Insurance Co.,* 79 N.J.L. 398, 399, 75 A. 167 (Sup.Ct.1910). The parties agree that the named insured, Mr. Loch, died after the one year period specified in the incontestability clause of the policy. That being the case, it is clear that New Jersey law precludes the defendant from asserting its defense based upon the absence of a contract. The plaintiff, therefore, is entitled to summary judgment on his claim as a matter of law. Fed.R.Civ.P. 56(c).

There remains, however, the question of whether the incontestability clause bars the defendant from making a counterclaim against a beneficiary who is also its agent for breach of fiduciary duty under the field underwriter's contract. The legal question presented is a novel one. Neither the parties' nor my own research has discovered a New Jersey case or a case from any other jurisdiction squarely on point. Although a few courts have considered similar issues involving insurance policies allegedly obtained by the fraud of an agent, see *e. g., Central States Life Insurance Company v. Byrnes,* 375 S.W.2d 330 (Tex.Civ.App.1964); *Kansas Life Insurance Co. v. First Bank of Truscott,* 124 Tex. 409, 78 S.W.2d 584 (Com. App.1935); *Cutler v. Hartford Life Insurance Co.,* 22 N.Y.2d 245, 292 N.Y.S.2d 430, 239 N.E.2d 361 (N.Y.Ct.App.1968), a majori-

ty rule for handling such cases is not discernible.

In determining how New Jersey would resolve the issue I have taken guidance from Judge Adams' instructive opinion in *Becker v. Interstate Properties,* 569 F.2d 1203 (3d Cir. 1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In that case, Judge Adams discussed the role of federal courts in answering novel questions of state law. According to Judge Adams,

Inasmuch as no New Jersey cases are squarely on point, it is important to make clear that our disposition of this case must be governed by a prediction of what a New Jersey court would do if confronted with the facts before us. Such an estimate cannot be the product of a mere recitation of previously decided cases. Rather, as in any diversity case, a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts. A diversity litigant should not be drawn to the federal forum by the prospect of a more favorable outcome than he could expect in the state courts. But neither should he be penalized for his choice of the federal court by being deprived of the flexibility that a state court could reasonably be expected to show.

The federal tribunal is thus obligated to follow the course that it expects New Jersey courts would adopt in similar circumstances.

Because we are dealing here with a summary judgment, our analysis is limited to the inquiry. of whether any state of facts reasonably inferable from the record could entitle the plaintiff to send the case to the jury under New Jersey law.

*Id.* at 1204–06 (footnotes omitted). *See* C. A. Wright, *Handbook of the Law of Federal Courts* § 58 (3d ed. 1976).

The facts, when viewed most favorably to New York Life, reveal that James Strawbridge, the plaintiff, is a Field Underwriter for the defendant New York Life Insurance

Company and entered into a Field Underwriter's Contract with the defendant on or about October 20, 1965. Under the terms of the contract, the plaintiff was charged with the duty of "giving the Company any information or knowledge of facts which may affect the insurability of the Proposed Insured. This would include notifying the Company, regardless of whether or not cash has been paid, of any change in the insurability that occurs prior to delivery of the policy." Agents Manual, K–19, incorporated by reference in the Field Underwriter's Contract. The plaintiff processed the application of his father–in–law, John Henry Loch, for a $50,000 life insurance policy. This application omitted medical history which included a coronary thrombosis requiring a month's hospitalization in 1970, and hypertension and gout. Coronary thrombosis was listed on Mr. Loch's death certificate as a contributing cause of death.

The defendant contends that the omissions were material misrepresentations of which the plaintiff was aware and that Mr. Strawbridge fraudulently concealed the omissions in violation of his fiduciary duty as defendant's agent. This contention is supported inferentially by the facts viewed in a light most favorable to the defendant. The plaintiff, who normally used a Dr. Levine for insurance physicals, took Mr. Loch to a different doctor for the medical examination. Dr. Levine was Mr. Loch's personal physician and was well acquainted with his medical history. It could certainly be inferred, therefore, that Mr. Strawbridge intentionally had Mr. Loch avoid Dr. Levine in order to facilitate omission of relevant medical history. Moreover, as Mr. Loch's son–in–law, Mr. Strawbridge may certainly be inferred to have had knowledge of Mr. Loch's month–long hospitalization for coronary thrombosis.

Because of my prior determination on the applicability of the incontestability clause, the defendant is liable on a policy which, it avers, it would never have written had it known the true facts. The defendant has, therefore, been damaged by Mr. Strawbridge's alleged acts. It is clear that, were the plaintiff not the beneficiary on the policy, the defendant would have a cause of action against him for breach of fiduciary duty. *See Marchitto v. Central Railroad Co. of New Jersey,* 9 N.J. 456, 88 A.2d 851 (1952); *Bohlinger v. Ward & Co.,* 34 N.J.Super. 583, 113 A.2d 38 (App.Div.1955), *aff'd,* 20 N.J. 331, 120 A.2d 1 (1956). The question to be determined then is, if all of the above facts were proved by the preponderance of the credible evidence, would the New Jersey courts hold as a matter of law that the incontestability clause in the Loch policy bars New York Life from asserting a claim for breach of fiduciary duty against its agent, Mr. Strawbridge, who is also the beneficiary on that policy. The question pits the protective legislative policy embodied in the statutorily mandated incontestability clause against the time–honored principle of a fiduciary duty. It is with this conflict in mind that this case must be considered; but it must be decided in accordance with the applicable principles of law.

■ It is important to remember that there are two independent relationships present in this case: the relationship between the plaintiff and the defendant as beneficiary and insurer, and the relationship as agent and principal. Because the incontestability clause in the insurance contract governs the issues raised with respect to the beneficiary/insurer relationship, a counterclaim based on fraudulent behavior within that relationship would be barred. *Lindsay v. U. S. Life Insurance Co.,* 80 N.J.Super. 465, 194 A.2d 31 (Law Div. 1963). However, we are not here concerned with a counterclaim of that nature. Rather, the counterclaim is based on an alleged breach of duties owed by the plaintiff in his capacity as defendant's agent. Because this relationship is different in kind from the beneficiary/insurer relationship, it is necessary to examine closely the policies underlying the statutorily mandated incontestability clause in order to decide whether the bar should be applied in the agent/principal relationship.

■ The insurance contract and applicable state law govern the relationship between the insurer, insured, and beneficiary. Applicants for insurance are bound to exercise good faith in making an application, otherwise the contract can be rescinded for misrepresentation. *See e. g., Drews v. Metropolitan Life Ins. Co.*, 79 N.J.L. 398, 75 A. 167 (Sup.Ct.1910). In view of the unequal bargaining position of applicants and insurance companies, the state has enacted protective legislation to limit this power of rescission.

■ N.J.S.A. 17B:25–4 requires every insurance policy to contain a provision establishing a period of contestability not longer than two years. In the present case, New York Life's policy shortened this period to one year. Whatever the length of the period, the purpose of incontestability clauses is "to give the insured a sense of security after the stated period elapses." *Johnson v. Metropolitan Life Insurance Co.*, 53 N.J. 423, 444, 251 A.2d 257 (1969). The clause does not condone fraud, but allows an adequate period for the insurer to discover fraud and protect its rights. *Prudential Insurance Co. of America v. Connallon*, 108 N.J.Eq. 316, 319, 154 A. 729 (E.&A.1930). The clause has the effect of encouraging insurers to be diligent and alert by prescribing a time period after which the insurer must relinquish its right to contest the validity of a policy.

■ Counterpoised against this legislative policy is the need to preserve the principles of a fiduciary relationship which impose a higher duty on one occupying a confidential position. *See Konsuvo v. Netzke*, 91 N.J.Super. 353, 220 A.2d 424 (Ch. 1966). It is clear that New Jersey regards an insurance agent as occupying a fiduciary position with his insurance company. *See* N.J.S.A. 17:22–6.1; *Bohlinger v. Ward & Co.*, 34 N.J.Super. 583, 591, 113 A.2d 38 (App.Div.1955), *aff'd*, 20 N.J. 331, 120 A.2d 1 (1956). Moreover, New Jersey law regards fiduciary duty with some reverence. "No principle of law is more firmly established than that which forbids an agent to take an unfair personal advantage of the opportunities of his position in the use of things entrusted to him in the capacity of a fiduciary." *Id.* As Judge Cardozo so eloquently stated in this oft–quoted passage:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion of particular exceptions". Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928) *quoted in Konsuvo v. Netzke*, 91 N.J.Super. 353, 369, 220 A.2d 424 (Ch. 1966).

Allowing the counterclaim for breach of fiduciary duties would certainly deprive the present plaintiff of the protection generally afforded beneficiaries under incontestability clauses. It would not, however, significantly interfere with the legislative intent underlying such clauses. As I mentioned before, such legislation was intended for the protection of insureds and beneficiaries who occupy an unequal bargaining position *vis a vis* insurers. In this case, the beneficiary in question was not in an inferior position, but a superior position by virtue of the confidential relationship he held with the insurer as its agent. In contrast, to deny the counterclaim would seriously violate principles relating to a fiduciary's duty without significantly advancing the legislative policies embodied in the incontestability clause. The purpose of encouraging an insurer to be diligent in discovering fraud and acting on the discovery is not served if the agent–the very person in whom it places its trust and on whom it relies to make the discovery–is shielded from liability when he is the perpetrator of the fraud.

In view of the high regard with which New Jersey courts treat a fiduciary's duty, and the fact that allowing the counterclaim to proceed would not contravene the purposes of incontestability clauses, it is my judgment that a New Jersey court, if confronted with the issue, would find that the incontestability clause does not bar a suit for breach of fiduciary duty where the agent is also the beneficiary under the policy. The New York Court of Appeals has come to the same conclusion in an analogous circumstance. *Cutler v. Hartford Life Insurance Co.*, 22 N.Y.2d 245, 292 N.Y.S.2d 430, 438, 239 N.E.2d 361, 367 (N.Y.Ct.App. 1968).

To sum up, I have granted the plaintiff's motion for summary judgment on his claim for death benefits under the insurance policy, but am denying the plaintiff's motion for summary judgment on the defendant's counterclaim for breach of fiduciary duty and breach of the Field Underwriter's Contract.

## ON MOTION FOR RECONSIDERATION

On October 16, 1980, I granted the plaintiff's motion for summary judgment on his claim for death benefits under a life insurance policy on the basis of the statutorily mandated incontestability clause. However I denied the plaintiff's motion for summary judgment on the defendant's counterclaim for breach of fiduciary duty and breach of the Field Underwriters Contract, holding that the policy's incontestability clause did not bar these independent causes of action. The case is before me today on the defendant's motion for reconsideration of the order granting summary judgment.

In support of this motion, the defendant has brought to my attention evidence that, when every favorable inference is drawn, suggests that an imposter, not the named insured Mr. Loch, showed up at the medical examinaton. Although the New Jersey cases have never dealt with the issue of whether the incontestability clause bars proof of imposture, it is a well established principle of insurance law that the clause does not bar such proof. *See, e.g., Maslin v.*

*Columbian National Life Insurance Co.*, 3 F.Supp. 368 (S.D.N.Y.1932), *Petaccio v. New York Life Insurance Co.*, 125 Pa.Super. 15, 189 A. 697 (1937), 12 Appleman, *Insurance Law and Practice* § 7123. The court in *Maslin, supra*, the leading case on the issue, stated:

> It is a rule applicable to contracts generally that where a man, pretending to be some one else, goes in person to another and induces him to make a contract, the resulting contract is with the person actually seen and dealt with and not with the person whose name was used . . . .
>
> .    .    .    .    .
>
> So here, if the defendant can prove that a healthy man impersonated a diseased Samuel Maslin and took the medical examination under the name of Samuel Maslin, then the diseased Samuel Maslin who was the plaintiff's son did not become a policyholder . . . . The defendant's only contract was with the man who made the application and took the examination.
>
> It is obvious that the interposition of these matters by the defendant is not a contest of the policies within the meaning of the incontestability clause. The insurer does not by this defense dispute the validity of the policies issued by it. It says in effect that the man it insured was not the plaintiff's son, Samuel Maslin.

*Maslin, supra*, at 370 (citations omitted). This rationale does not conflict with the interpretation of the incontestability clause found in the New Jersey cases and I am confident that a New Jersey court would follow it if confronted with the issue. In this case, the defendant has produced an expert's report that casts doubt on the authenticity of the named insured's signature which was obtained at the medical examination. Moreover, the medical examination was not conducted by Dr. Levine, the doctor whom the plaintiff normally used for such physicals, and who was Mr. Loch's personal physician. The doubtful signature coupled with the use of a different doctor is sufficient, when every reasonable inference is

given, to conclude that an imposter, not Mr. Loch, took the physical examination and therefore, was the person insured by the life insurance policy in question. Accordingly, I must vacate my previous order of summary judgment on the plaintiff's claim for death benefits under the policy.