John R. MANZELLA, M.D.

v.

**INDIANAPOLIS LIFE INSURANCE COMPANY.**

No. 92–0002.

United States District Court, E.D. Pennsylvania.

Jan. 26, 1993.

Memorandum Denying Reconsideration Feb. 3, 1993.

---

David L. Marshall, Christopher H. Schubert, Eastburn & Gray Law Offices, Doylestown, PA, for plaintiff.

Michael J. Olley, Andrew F. Susko, White and Williams, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

This is a diversity action in which plaintiff seeks payment of benefits under two disability insurance policies issued to him by defendant. Plaintiff and defendant have filed cross motions for summary judgment. The case was referred to a magistrate judge, who recommended that plaintiff's motion for summary judgment be granted and that defendant's motion for summary judgment be denied. For reasons discussed below, this court accepts the Report and Recommendation of the Magistrate Judge with regard to

the disability income protection policy and will grant partial summary judgment for the plaintiff. With regard to the business overhead policy, the court will deny the summary judgment motions of both plaintiff and defendant because of an issue of material fact not raised before the magistrate judge.

## BACKGROUND

Plaintiff, John R. Manzella, M.D. ("Manzella"), applied to defendant Indianapolis Life Insurance Company ("Indianapolis") on June 26, 1988, for two insurance policies, which are the subject of this lawsuit. Indianapolis issued the policies to Manzella on December 1, 1988. One policy provided for disability income protection and had premiums of $14,-153.00 annually. The other was designed to cover business overhead expenses and had premiums of $1352.00 annually. Manzella paid and Indianapolis collected all premiums due under the terms of the two insurance contracts.

Manzella is an orthopedic surgeon who is licensed to practice medicine in the State of New Jersey. Indianapolis granted Manzella's request for a "letter of specialty for orthopedic surgery" in conjunction with the issuance of the insurance policies. Manzella actively practiced medicine until February, 1991 when he succumbed to health problems that prevented him from continuing with his practice. Manzella subsequently filed a claim with Indianapolis seeking the payment of benefits under the two insurance contracts. Indianapolis denied payment to Manzella, who responded by filing this action. Indianapolis answered and filed a counterclaim, asserting, *inter alia*, that Manzella knowingly made material misrepresentations of fact in his policy applications, and that such misrepresentations entitle the insurer to rescind the policies.

The parties agree that New Jersey law should govern the resolution of this action.

## DISCUSSION

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute will not defeat an otherwise properly supported motion. *Id.* at 247, 10 S.Ct. at 2510. Only disputes over facts "that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 10 S.Ct. at 2510.

Indianapolis has advanced several arguments in support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment. First, it claims that it is entitled to summary judgment because the plaintiff engaged in fraudulent misrepresentations in his applications for the policies, and that this justifies their rescission. Secondly, and in the alternative, Indianapolis contends that Manzella's motion for summary judgment must be denied because there are issues of fact for jury determination, most notably whether Manzella's sickness began during the period of the policy or was an excluded pre-existing condition.

Manzella counters that Indianapolis is barred by the express language of the insurance policies and state statute from contesting any statements, even if fraudulent, made in the policy application.

■ Interpretation of the insurance contracts hinges on so-called "incontestability clauses," which limit the right of the insurer to question statements in the insured's application after two years have passed. New Jersey insurers offering health insurance have a statutory choice of two incontestability clauses to use, and the court concludes that the one they choose determines whether intentional misstatements in the application with the purpose of deceiving will or will not void the policy.

The statutory section in question is N.J.S.A. § 17B:26–5, entitled "Time limit on certain defenses," and it grants insurance companies two options in writing their policies, of which they must choose one. It

states that, in health policies for individuals, there "shall be a provision as follows:"

(a). After 2 years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such 2–year period.

(1) ...

(2) A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium (a) until at least age 50 or, (b) in the case of a policy issued after age 44, for at least 5 years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption "INCONTESTABLE":

After this policy has been in force for a period of 2 years during the lifetime of the insured, (excluding any period during which the insured is disabled) it shall become incontestable as to the statements contained in the application.

N.J.S.A. § 17B:26–5.

■ Defendant argues that because plaintiff committed fraud in his application, the court should grant its summary judgment motion. Assuming, *arguendo*, that plaintiff knowingly made fraudulent misstatements in his application, what are the implications for the disability coverage that he now claims, more than two years after defendant issued the policy? It is important to note that defendant chose the optional incontestable clause under subsection (a)(2), which does not make an exception for fraudulent misstatements; it is also important to note that only the business overhead policy included another optional clause, which excluded any period of disability from the two year maturation period of the incontestability clause.

In the income protection policy, the incontestability provision does not except fraudulent misstatements and reads as follows:

8.2 Incontestable

a. After Your Policy has been in force for two years, We cannot contest the statements in the application.

Income Protection Policy at 9.

The business overhead expenses policy incontestability clause also fails to make an exception for fraudulent misstatements and, in addition, includes the optional clause that excludes any periods of disability from the two years during which the incontestability clause matures. It states:

8.2 INCONTESTABLE

a. after your policy has been in force for two years, excluding any period during which you are disabled, we cannot contest the statements in the application.

Business Overhead Expenses Policy at 9. Because in neither policy did defendant chose the incontestability clause that makes a specific exception for fraudulent misstatements, the question then becomes what the New Jersey courts have said with regard to the interpretation of the clause which defendant chose.

The New Jersey case most helpful to a consideration of the present case is *Lindsay v. U.S. Life Insurance Co.*, 80 N.J.Super. 465, 194 A.2d 31 (1963). That was an action by the insureds under a major medical expenses policy asking for a declaratory judgment as to the validity of their future claims. The insurer denied liability on the ground that the policy was induced by fraudulent responses on the insurance application. Plaintiffs claimed that, since the policy had been issued over three years earlier, the application had become incontestable as to statements in it. In *Lindsay*, as in the present case, the insurers had chosen an optional clause, which, while it bore a different section number, contained essentially the same language as the one chosen in the case before us. Like the clause in the present case, it failed to include an exception for fraudulent misstatements. It was captioned "Incontestable" and stated:

After this policy has been in force for a period of three [now two] years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.

N.J.S.A. 17:38–13(A)(2)(a). After reviewing defendant's arguments that there were exceptions under this clause, the court found as follows: "I cannot reach the conclusion that the so-called 'incontestable' clause is anything less than absolute upon maturity." *Id.* 194 A.2d at 33.

The *Lindsay* court reviewed the legislative history of the section. The Uniform Individual Accident and Sickness Policy Provisions Law, as drafted in 1950 by the National Association of Insurance Commissioners, was enacted by New Jersey in 1951. *Id.* 194 A.2d at 32. It was intended to afford greater protection to policyholders and claimants through the introduction of the optional clause, by which the insurer, after a period of years, surrendered the right to base a defense upon a misstatement in the application or upon prior origin of any condition. *Id.* at 34.

Defendant in this case could have protected itself from claims based on fraudulent information by choosing the clause making such information always contestable, but it did not, presumably to make its policies more attractive to prospective customers. It must live with the consequences of that choice. It cannot now, after the incontestability period has matured, raise the issue of fraudulent misstatements in the application.

No case cited by either party challenges the holding of *Lindsay*, but other cases confirm its public policy considerations in different circumstances. For example, *Strawbridge v. New York Life Ins. Co.*, 504 F.Supp. 824 (D.N.J.1980), emphasizes the protection that the state of New Jersey intended to give applicants for insurance in passing statutes like the one quoted above. Defendant cites the *Strawbridge* case for the proposition that "applicants for insurance are bound to exercise good faith in making an application, otherwise the contract can be rescinded for misrepresentation." *Id.* at 829, *citing Drews v. Metropolitan Life Insurance Company*, 79 N.J.L. 398, 75 A. 167 (1910). But defendant fails to quote the more important statement, for our purposes, directly following that one: "In view of the unequal bargaining position of applicants and insurance companies, the State has enacted protective legislation to limit this power of rescission." *Strawbridge* at 829.

*Drews v. Metropolitan Life Ins. Co.*, 79 N.J.L 398, 75 A. 167 (1910), shows that the willingness of the courts to enforce a time limit within which a defense of fraudulent misstatement may be established by an insurance company is a long-standing one that existed before the present statute. In that case, an agreement contained in a life insurance policy that it would be incontestable, except for nonpayment of premiums, two years after its date of issue, was interpreted to limit all defenses, including the insured's fraudulent representations as to physical condition. While the court did not condone fraud, it recognized the importance of honoring the agreed time limit within which the defense had to be established.

Cases that have allowed insurance companies to rescind policies for fraudulent misrepresentation are either ones that had an exclusion for fraudulent misrepresentation in the incontestability clause or ones like *Formosa v. Equitable Life Assur. Soc.*, 166 N.J.Super. 8, 398 A.2d 1301, *certif. den.* 81 N.J. 53, 404 A.2d 1153 (1979), where the claim was made before the maturation of the incontestability period.

Where companies choose to except fraudulent misrepresentations in the incontestability clause, they can of course raise fraud issues in defense of claims, but even then they do not always succeed in voiding a policy in the case of misinformation. In *Johnson v. Metropolitan Life Insurance Co.*, 53 N.J. 423, 251 A.2d 257 (1969), the policy contained an exclusion for fraudulent misrepresentations that would have voided the policy, but the court found that no fraud existed. The insured had stated on his application, and the court found that he believed, that he had no heart disease, although he had been told by one doctor he had a possible heart insufficiency.

In the present case, if the allegations of the defendant are true, the company could have voided the policy had it chosen to insert a fraudulent misinformation clause. As it is, the failure of plaintiff to provide accurate medical information on his application for the income protection insurance policy is irrele-

vant under New Jersey law once the incontestability clause that the defendant chose has matured. The court will grant partial summary judgment for plaintiff on the income protection policy. If plaintiff made fraudulent misrepresentations in his insurance application, the court certainly does not condone his fraud. But the court recognizes that the legislature by statute, and the parties themselves by contract, may limit the time period during which fraudulent misstatements will void an insurance contract. Under state law, defendant could have chosen an incontestability clause which would have allowed it to void a policy for fraudulent misstatement without time limit. It did not make that choice, and the clause it chose instead required that it make any challenge for fraudulent misstatement within two years. Having imposed on itself that time limit, defendant then failed to make the kind of thorough investigation that might have revealed that plaintiff had serious medical problems not reported in the application. Defendant cannot now expect the court to undo the consequences of the limiting choices that it undertook freely.

■ Defendant's second line of argument is that, even if its motion for summary judgment is not granted, plaintiff's motion for summary judgment must be denied because there are issues of fact for jury determination. One such question, argues defendant, is whether plaintiff had a pre-existing disabling sickness as defined in the policies. Indianapolis argues that the definition of sickness in an endorsement to the income protection policy, which restricts it to sickness or disease "which causes loss commencing while the policy is in force," does not include Manzella's condition because he had, or may have had, a pre-existing condition and loss.

Both policies contain statutorily mandated clauses with regard to exclusions for pre-existing conditions as part of their incontestability provisions. The statute states that, in health policies for individuals, in addition to the section as to the incontestability period quoted above, there shall also be the following provision:

    (b). No claim for loss incurred or disability (as defined in the policy) commencing after 2 years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss and existed prior to the effective date of coverage of this policy.

N.J.S.A. § 17B:26–5.

The income protection policy that Indianapolis issued to Manzella contains the following section in its incontestability clause:

    b. No claim for loss incurred or disability beginning after two years from the date of issue will be reduced or denied because of a pre-existing condition unless it is excluded by name or specific description.

Income Protection Policy at 9. The business overhead expenses policy, in its incontestability clause states:

    b. we will not pay benefits for a loss which is excluded by name or specific description.

Business Overhead Expenses Policy at 9.

The question is whether the definition of sickness in a policy, which restricts it to sickness or disease "which causes loss commencing while the policy is in force," can supersede these statutorily mandated sections. Defendant argues in effect that it can, so that if Manzella's loss was due to a pre-existing condition and the loss began before the policy was in force, then even if the pre-existing condition was not named or specifically described, it is excluded from coverage under the definition of sickness. Defendant claims that whether plaintiff had such a pre-existing condition is a factual issue which precludes summary judgment for plaintiff.

The court in *Lindsay* considered this very argument. The defendant in *Lindsay* argued that the definition of "sickness" in its policy barred recovery because in it, sickness was defined as something contracted while the policy was in force. The court rejected that argument, because the policy also contained a clause essentially similar to the one quoted above as 17B:26–5(b), which said that no exceptions could be made for conditions existing prior to the issuance of the policy, unless they were named or specifically described. The court held that a definition of a

term in the policy could not be allowed to alter the effect of a required provision in the uniform law. Read without the company's definition of sickness, the terms of the policy quoted above expressly allowed the claim, even if founded on a disease or condition pre-existing the effective date of the policy, provided that there was no exclusion by name or specific description. The insurance policy in *Lindsay* contained no such exclusion. The court concluded:

> The full benefit of the "incontestable" clause must accrue to plaintiffs, unaffected by collateral provisions. The legislative history of the uniform law makes the intendment plain—the "additional protection" to policyholders ...

*Id.* 194 A.2d at 35.

The court in *Lindsay* decided that an insurance company could not defeat the purpose of a mandatory legislated incontestability clause in an insurance policy by defining sickness as something that first occurs during the term of the policy. Defendant cites *Massachusetts Casualty Insurance Co. v. Forman*, 516 F.2d 425 (5th Cir.1975), *cert. denied* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), which held that the insurer's definition of coverage could limit the operation of an incontestability clause, but defendant has cited no New Jersey cases that have adopted this interpretation, and the has court found none.

Indianapolis argues in its Brief in Response to Plaintiff's Supplemental Memorandum of Law that the facts in *Lindsay* are substantially different from those in the case at bar. The court finds that the facts are not sufficiently different to make the *Lindsay* court's legal analysis inapplicable. Indeed, it is directly on point. The policies in the present case, like the one in *Lindsay*, contain no exclusion of pre-existing conditions by name or specific description. The court finds that in those circumstances, once the incontestability clause has matured, no pre-existing conditions can be excluded. There is, therefore, no factual question that needs to be resolved as to this issue.

■ There is, however, a factual issue concerning plaintiff's disability under the business overhead expenses policy which remains to be determined. It was not raised before the magistrate judge and therefore was not discussed in his report. The court noted above that, in the business overhead expenses policy, defendant adopted an additional optional exclusionary clause within the optional incontestability clause under the New Jersey State Statute. The incontestability clause in that policy thus reads:

> a. after your policy has been in force for two years, excluding any period during which you are disabled, we cannot contest the statements in the application.

The defendant chose this clause, with the phrase "excluding any period during which you are disabled" only for the business overhead policy. The policy was issued on December 1, 1988, and defendant reported in his notification to defendant that his disability began on February 23, 1991, and stated in an affidavit that it began on February 25, 1991, the day he consulted a doctor about it. If plaintiff was disabled for more than 85 or 87 days during that period, depending on which date is accepted for the onset of his permanent disability, then the two year period did not expire, the incontestability clause did not mature, and defendant can contest any statement in the application.

There is evidence that plaintiff suffered a substantial period of disability when the policy was in force. In his affidavit of June 19, 1992, plaintiff reported that in 1989, he had triple by-pass surgery at Emory University Medical Center. He further reported that the surgery caused no lasting disability, but there must have been a period of total temporary disability, followed by a period of partial temporary disability after such surgery. There is also a question as to whether plaintiff suffered partial disability during the two year incontestability period from the diabetes that eventually caused his total disability. Finally, there is the critical question whether plaintiff's disability during the period before he submitted his disability claim was sufficient to reduce the time between issuance of the policy and plaintiff's total disability to less than two years. If it did, then the statements plaintiff made in his application are not incontestable as to the business overhead expenses policy.

The court finds that questions concerning plaintiff's disability during the two year period create a genuine issue of material fact under the business overhead expenses policy. It will therefore deny both plaintiff's and defendant's motions for summary judgment with regard to that policy.

■■■ Defendant also argues that Dr. Manzella's failure to keep his promise, allegedly contained in the application, to drop other insurance coverage constitutes a breach of contract and therefore no coverage is owed under the policy. Indianapolis contends that elimination of two other disability policies was a dependent covenant as well as a condition precedent to the actual contract. Under New Jersey law, a "condition precedent" is a fact or event occurring subsequent to the making of a valid contract which must exist or occur before there is a right to immediate performance. *Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 104 N.J.Super. 250, 249 A.2d 623 (Chancery Div.1969). While finding no New Jersey case that applies this principle to facts similar to those in this case, defendant cites a case from Florida, in which the court found that it was clear from the four corners of the insurance document that cancellation of other policies was an express condition of the insurance agreement in question. *Paul Revere Life Ins. Co. v. Dietz*, 785 F.Supp. 970 (M.D.Fla.1992).

In his application, plaintiff reported that he had two disability income policies in force. In response to question 3.a., whether the insurance applied for was intended to replace or change other insurance, plaintiff checked the "yes" box. Those applicants who answered "yes" were directed to circle the policies being replaced. Plaintiff circled both policies. Question 3.b. asked when the policy or policies currently in force would be terminated. Plaintiff answered, "upon issue of new". Finally, question 3.c. stated, "If required, replacement forms must accompany this application." None was included in the appendix, and evidently none was required. If defendant had meant for cancellation of the old insurance to be a condition precedent for the issuance of the new policy, it could have stated that in the policy, as the insurer did in *Paul Revere* evidently did. Instead, defendant asked questions that were purely informational, and the court finds that the insurance policies issued in this case did not make rescission of prior policies a condition precedent.

## CONCLUSION

For reasons discussed above, the Report and Recommendation of the Magistrate Judge in this case is accepted in part and partial summary judgment will be granted for plaintiff with regard to the income protection policy. The summary judgment motions of both plaintiff and defendant will be denied with regard to the business overhead expenses policy.

## MEMORANDUM AND ORDER DENYING RECONSIDERATION

YOHN, District Judge.

Defendant, Indianapolis Life Insurance Company, has filed a motion for reconsideration of the court's order, dated January 26, 1993, granting partial summary judgment for plaintiff. Because trial is imminent, the court has acted upon the motion prior to the filing of a response by plaintiff. For reasons discussed below, the court will deny the motion.

■■■ Defendant claims that the court was in error in granting partial summary judgment for the plaintiff under one of the policies in the case, the income protection policy, because there is an issue of fact as to whether the incontestability clause, subsection (b), in that the policy precludes denial of the claim under the facts of this case. The subsection states:

(b) no claim for loss incurred or disability beginning after two years from the date of issue will be reduced or denied because of a pre-existing condition unless it is excluded by name or specific description.

No pre-existing conditions were excluded from the policy by name or specific description. Defendant contends that, while this clause prevents denial of claims for loss incurred or disability beginning *after* two years from the date of issue, it does not prevent

denial of such claims when the loss or disability begins *during* the two year period. Defendant contends that plaintiff's loss or disability began during the two year period.

It is well established that the interpretation of contractual provisions is a question for the court. *McDowell–Wellman Engineering Co. v. Hartford Accident & Indemnity Co.*, 711 F.2d 521, 525 (3d Cir.1983); *Johnson v. Bensalem*, 609 F.Supp. 1340 (E.D.Pa. 1985). The court interprets the subsection in question to mean that, *if* a claim can be contested because the disability began before the end of two years, then the claim can be contested only if the *specific* loss or disability for which the claim is made began during the two year period. It does not interpret the subsection to mean that any disability or loss during the two year period will allow the defendant to deny a later claim for loss or disability that is due to a *different* cause.

At the very least, the subsection is ambiguous as to whether it applies to a loss during the two year period from a disability different from the one resulting in plaintiff's claim after the two year period. When the language of an insurance policy is ambiguous or susceptible to more than one interpretation, it is well established under Pennsylvania law that it must be strictly construed against the insurer and in favor of coverage for the insured. *Celley v. Mut. Ben. Health & Accident Assn.*, 229 Pa.Super. 475, 324 A.2d 430 (1974); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983).

Defendant relies on a statement in the court's memorandum dated January 26, 1993, that there is an issue of fact as to "whether plaintiff suffered partial disability during the two year incontestability period from diabetes." Memorandum and Order at 15. On review of all the submissions in this case, the court concludes that the statement was made in error. There is no evidence from which to conclude that there is a question of fact as to partial disability of the plaintiff from diabetes during the two year incontestability period. The evidence as to disability during that period relates solely to plaintiff's coronary by-pass surgery.

While the reasons discussed above are sufficient in themselves to warrant the denial of defendant's motion for reconsideration, there are additional reasons in support of denial.

Even if there were evidence of a temporary period of disability due to diabetes during the two-year window, there is nothing in the policy that clearly disqualifies a claimant who has a temporary but resolved disability, as opposed to a continuous disability, starting within the two-year window. If plaintiff suffered a temporary period of disability due to diabetes during the two year period, followed by a period of health, and then suffered permanent disability after the expiration of the two-year period, plaintiff would have a valid claim for permanent disability. Under subsection (b) of the incontestability clause, quoted above, such a claim is not clearly excluded. The most defendant could claim is that the subsection is ambiguous on this point, which means that it must be construed in favor of coverage for the insured. The only section of the policy that specifically discusses recurrent disability states:

> After a period of Disability *for which We paid Benefits* ends and You become Disabled again from the same or related causes, We will consider it a continuation of the prior period of Disability unless You have Monthly Earned Income for six months at least equal to Your Average Monthly Earned Income Before Disability began. (emphasis added)

Income Protection Policy at 8. It is undisputed in this case that no benefits were paid under the policy prior to the claim at issue in this suit; therefore, this section dealing with recurrent disabilities does not apply by its specific terms.

Moreover, plaintiff disclosed on his application that diabetes was a pre-existing condition, and defendant did not exclude diabetes from its coverage. Subsection (b) prevents the denial of claims for disability beginning *after* the two-year window period unless the precipitating condition has been excluded. This does not necessarily mean that even when the disability begins *during* the two-year period and continues thereafter, the claim is barred. Defendant included the mandatory statutory language of the subsec-

tion quoted above, with regard to disability for a non-excluded pre-existing condition beginning *after* the two-year period, but neglected to say in the policy what would be done in the case of a disability for a disclosed but non-excluded pre-existing condition that began during the two-year period. The defendant contends that in such a case, it can deny the claim. The cover sheet to the policy seems to imply the opposite of what defendant would have us to find the policy means, although the factual situation to which the cover sheet refers is not present in this case. It says the following:

Pre–Existing Conditions Limitation—During the first two years from the Date of Issue shown on Page Three, We will not pay Benefits for a Disability caused by a Pre–Existing Condition if it was not disclosed on Your Application. Also, We will not pay Benefits for any loss We have excluded by name or specific description.

Disability Income Policy, Cover Sheet. This suggests, by implication, the opposite of what defendant contends. It suggests that if the pre-existing condition was disclosed on the application, and in this case it was, that the company will pay benefits even during the first two years.

For the reasons stated above, the court concludes that the partial summary judgment for plaintiff under the income protection policy was properly granted.