**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,**
Plaintiff,

v.

**John J. NITTOLO, Defendant, Third–Party Plaintiff,**

v.

**Paul Coleman GARBER, Third–Party Defendant.**

Civil Action No. 95–1811 (JBS).

United States District Court, D. New Jersey.

Jan. 24, 1997.

R.Civ.P. 11. If plaintiff fails to do so, her complaint against Newark will be dismissed with prejudice.

Douglas F. Johnson, Earp, Cohn, Leone & Pendery, Westmont, NJ, for Plaintiff.

James D. Brady, Merchantville, NJ, for Defendant.

Mark S. Nathan, McDonald, Nathan & Carbone, Mount Laurel, NJ, for Third–Party Defendant.

## *OPINION*

SIMANDLE, District Judge:

Presently before the court are the motions for summary judgment of plaintiff Hartford Life and Accident Insurance Company ("Hartford") and third party defendant Paul Coleman Garber ("Garber") pursuant to Fed. R.Civ.P. 56. For the reasons stated below, both motions will be granted.

### I. *Background*

Defendant John J. Nittolo applied for and was issued a disability income insurance policy from plaintiff Hartford which became effective on December 14, 1992. On July 6, 1994, Nittolo filed for benefits under his policy for the disability of hepatitis. Hartford initiated this litigation, seeking a judgment of rescission of the policy on the grounds of material misrepresentation, a declaratory judgment that the policy is null and void, and a declaratory judgment that Nittolo's disability claim is not covered by the policy or its benefit increase rider. Hartford claims that Nittolo misrepresented his income, occupational duties, insurance history, and family and personal medical history on his application for the policy. Nittolo has filed a counterclaim against Hartford to enforce the policy and a third-party complaint against his insurance agent, Garber, for negligence in completing the application for insurance. Hartford and Garber have filed cross-claims against each other for contribution and indemnification.

This Court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and New Jersey's substantive law supplies the rule of decision.

## II. *Discussion*

### A. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Products*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that: "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer*, 72 F.3d at 330 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Motion of plaintiff Hartford*

Hartford argues that several misrepresentations made by Mr. Nittolo on his application and during his independent paramedical exam permit a rescission of the policy. Under New Jersey law, an insurer may rescind a policy for equitable fraud on the grounds of false statements in the application which materially affect the acceptance of the risk or the hazard assumed by the insurer. N.J.S.A. 17B:24–3(d); *Massachusetts Mutual Life Ins. Co. v. Manzo*, 122 N.J. 104, 584 A.2d 190 (1991). To prove equitable fraud, the insurer need not prove that the applicant had an intent to defraud. Even innocent misrepresentation justifies rescission of the policy. *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 651 A.2d 92 (1995); *see also Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098 (1994) (holding that insured has absolute duty to tell the truth about all material items on an application).

Hartford has presented a laundry list of misrepresentations made by Mr. Nittolo. As evidence of their materiality, Hartford has produced the Certification of Individual Disability Insurance Underwriter, Rebecca Govoni, (Ex. "F" to Pl. 12G Statement) which states that if Nittolo had accurately represented his income, health, occupational duties, or declinations by other insurance companies, the policy would not have been issued as written.

Mr. Nittolo responds with two arguments: (1) that the misrepresentations in the application were not material and (2) that any errors in the application were caused by the negligence of his insurance agent, Paul Garber, in failing to accurately record information; failing to ask all of the questions on the application, and refusing to allow Mr. Nittolo an opportunity to review his answers before signing.

1. *Material misrepresentations by Nittolo*

a. *Income*—The application for disability insurance asks for the applicant's net earned income as reportable for federal income tax purposes. (Ex. "C" to Pl. 12G Statement). Hartford argues that since a disability income insurance policy naturally depends upon an applicant's income, a misrepresentation of income is material. Mr. Nittolo applied for a policy which would pay a disability benefit of $2,500 per month, or $30,000 per year. On the application, for both 1991 and 1992, Nittolo's net earned income is listed as $61,500, with $54,000 in wages. In reality, his tax returns reflect wages of $17,600 and $29,755 for 1991 and 1992 respectively. It is only logical, as demonstrated by Govoni's uncontradicted affidavit, that Hartford would not have issued a policy with benefits of $2,500 a month had it been given accurate income information, since a disability benefit of $2,500 per month, tax free, would be a substantial *increase* in this applicant's income if he became disabled.

b. *Occupational Duties*—The application also requests the applicant to name his occupation and exact daily duties. Hartford claims that Nittolo misrepresented the nature of his job as a ticket broker. The application states that his exact daily duties were to "administrate [sic] the office only. Office Duties." (Id.). At his deposition, however, Nittolo revealed that in fact, his duties include carrying large amounts of cash to purchase tickets and "running crews," which entails putting people in ticket lines at all hours of the night and handling problems his crews encounter in line, such as altercations with police and physical confrontations. Again, Hartford claims that this information would have altered its assessment of Mr. Nittolo's risk, as demonstrated by the Govoni Certification and accompanying risk assessment manual.

c. *Declination for Other Insurance Policies*—The application specifically asked whether Mr. Nittolo had applied or been declined for life or health insurance within the past two years. The answer on the application was simply: "Pacific Mutual Life—4/91 $500,000 life policy." No other details were given. In fact, Mr. Nittolo did receive a $500,000 life insurance policy issued without regard to his medical history, but was rejected for life insurance by a different company, Penn Mutual, in January 1991, because of an elevated liver function test, and by Prudential in April 1991, because of a pre-existing condition. (Ex. "G" to Pl. 12G Statement). Nittolo claims that he told Garber of these declinations and that he didn't write them down. In his deposition, Garber does admit to making a "scrivener's error" as to one of the entries. Yet, Nittolo bears ultimate responsibility for the misrepresentation because he signed the application which certified that he had read it and that the answers were true, complete and correctly recorded. Moreover, the completed application form was returned to Nittolo as an addendum to his Hartford policy, again placing this important omission before Nittolo.

d. *Liver Condition*—On the application, Mr. Nittolo's response to the question of whether he had ever had "any disease or disorder of the gall bladder, digestive system or liver" was "No." In reality, testimony of three doctors establishes that Mr. Nittolo indicated as part of his medical history that he had hepatitis as a teenager. Mr. Nittolo now claims to have said only that he was "exposed" to an outbreak of hepatitis at his high school and that each of the three doctors must have misunderstood what he said about hepatitis, and that he never was diagnosed with hepatitis until 1994, when he sought disability benefits. At oral argument, Hartford conceded that there may be a fact issue about the hepatitis diagnosis because of Nittolo's different recollection of what he told his doctors, but Hartford argued that Mr. Nittolo still made a material misrepresentation by failing to reveal his elevated liver function tests.

Plaintiff's undisputed evidence establishes that Mr. Nittolo knew of his elevated liver enzymes in 1991, when he was denied life insurance for that reason, and also in 1986. (Nittolo letter to Hartford 9/13/94, Ex. "N" to 12G Statement). Hartford has shown that this misrepresentation is material. (Cert. of R. Govoni). Mr. Nittolo also met with a doctor to discuss his liver function test re-

sults, but failed to reveal this either during his paramedical examination or in response to the question on the application, "Have you within the past 5 years, consulted a physician or other health care provider ... [or] sought attention in a medical care facility ... ?"

Mr. Nittolo well knew the significance of his recent prior history of impaired liver function, since he had both been so informed by his doctor and he knew that the elevated liver enzyme test results were the basis on which Penn Mutual had denied his life insurance application in 1991. Had his application truthfully revealed this information to Hartford, there is no doubt that the policy would not have been issued in its present form— either the application would have been rejected, or an exclusionary rider for liver conditions (including hepatitis) would have been attached.

e. *Other Misrepresentations*—Finally, Hartford claims that Mr. Nittolo made material misrepresentations both on his application and during his paramedical examination in his answers to the questions of whether he had "diabetes, cancer or venereal disease"; "used prescription drugs in the last 5 years" or had a "mental or emotional disorder including anxiety and depression." In responding, Mr. Nittolo failed to disclose that within the prior five years he had been treated for herpes and genital warts, and had been continuously prescribed valium for stress and anxiety (Nittolo Dep. at 42).

Mr. Nittolo argues that these misrepresentations were "unintentional non-disclosures" caused by the rushed manner in which his application was taken, and in any case are not material because they are not relevant to the liver condition for which he seeks disability benefits. Again, Nittolo cannot attribute his misrepresentations to Garber after placing his signature on the application. *See Monarch Life Ins. Co. v. Donahue*, 708 F.Supp. 674, 676 (E.D.Pa.1989) ("By certifying the veracity of the representations made in the application by his signature, an insured is estopped ... from asserting that questions were not asked or that answers given were not recorded properly.") The application itself reads:

I have read the statements and answers recorded above. They are to the best of my knowledge and belief true and complete and correctly recorded. They will become a part of this Application and any policy(ies) issued on it. The Company [Hartford] will rely on this information in making its determinations.

■ Further, an applicant's false statements do not have to relate to the ultimate claim for coverage to provide grounds for rescission as long as they are material. *See Manzo*, 122 N.J. 104, 584 A.2d 190 (1991) (rescinding life insurance policy of insured who died of a gunshot wound because of misrepresentation about whether he had diabetes).

The court finds that plaintiff Hartford has met its burden of establishing in this summary judgment motion that each of the above-described misstatements or omissions was material and that the Hartford policy would not have been issued in its present form if correct disclosures had been made. *See Haas*, 137 N.J. 190, 644 A.2d 1098 (1994); *Manzo*, 122 N.J. 104, 584 A.2d 190 (1991).

### 2. *Negligence of Garber*

■ Mr. Nittolo argues that any material misrepresentations on his application were caused by Mr. Garber's negligence, which should be imputed to Hartford since Mr. Garber was authorized to take its applications. Hartford cites relevant New Jersey caselaw that stands for the proposition that an independent insurance agent, or broker, acts as an agent of the insured, not the insurer. *See, e.g., Weinisch v. Sawyer*, 123 N.J. 333, 587 A.2d 615 (1991); *Wang v. Allstate Ins. Co.*, 125 N.J. 2, 592 A.2d 527 (1991). Hartford argues that since Mr. Garber was not its employee, and took applications for many other insurance companies, he is not an agent of Hartford. The agreement between Hartford and Mr. Garber also clearly indicates that Garber is an independent contractor, not an agent of Hartford. (Ex. B to Pl. Nov. 21, 1998 letter, "Sales Agreement"). Likewise, the very application that Mr. Nittolo signed indicated as clearly as possible that the broker is only an independent agent who has no authority to bind

Hartford. (Ex. "C" to Pl. 12G Statement). As an independent agent, Mr. Garber's alleged negligence cannot be imputed to Hartford.

Mr. Nittolo has failed to establish the existence of a genuine issue of material fact regarding the allegation that he made material misrepresentations in obtaining disability insurance or that Mr. Garber's negligence, if any, should be attributed to Hartford. Hartford is thus entitled to a rescission of the policy and summary judgment will be granted in its favor.

### C. *Motion of third-party defendant Garber*

■ Mr. Garber also seeks summary judgment as to the third-party complaint against him which alleges negligence and fraud. He argues that he is entitled to summary judgment on the grounds that (1) Nittolo cannot show harm because he was uninsurable at the time he applied for his policy with Hartford and a full disclosure would have resulted in no policy being issued by any other insurer; and (2) material misrepresentations in the portion of the application completed by the paramedical examiner form an independent basis for rescinding the policy.

### 1. *Lack of harm*

Although Mr. Garber claims that he went through the application carefully and recorded Nittolo's answers accurately, for the sake of argument, he assumes that he contributed to the misrepresentations on the application. Still, Garber argues that as a matter of law, Nittolo has suffered no loss as a result of his alleged conduct because if there had been no misrepresentations on the application, no policy would have been issued.

Garber relies on the decision in *Hood v. Prudential,* 758 F.Supp. 764 (D.D.C.1991), which grants summary judgment for an insurer on the grounds that the insured suffered no harm because Prudential would not have issued the policy if the applicant's true medical condition was known. The *Hood* court also found that it would be sheer speculation to find harm in the fact that had the original policy been declined, the applicant could have sought and obtained coverage elsewhere.

Likewise, Garber argues, it would be sheer speculation to find that Nittolo could have found another insurer given his rejection by two other insurance companies and the Certification of Rebecca Govoni that Hartford would not have issued the policy to Mr. Nittolo had it known his true medical condition. Mr. Nittolo has not produced any evidence that raises a genuine issue of material fact as to whether another insurer may have issued a policy to him. Although Mr. Nittolo did obtain a life insurance policy in April of 1991, that policy was issued on a non-medical basis and is not relevant to the question of whether he could have found an insurer who would issue a disability policy.

Thus, summary judgment will be granted on the grounds that Mr. Nittolo has suffered no harm attributable to Mr. Garber's conduct.

### 2. *Alternative grounds for rescission*

■ Mr. Garber also argues that summary judgment is appropriate because Mr. Nittolo failed to disclose his liver condition, treatment and medication for stress, and history of sexually transmitted disease to the paramedical examiner during the application process. Mr. Garber contends that these material misrepresentations would have been sufficient for rescission of the policy regardless of his contribution to any misrepresentations on the application.

This court agrees that Garber played no role in Nittolo's supplying of incorrect information to the paramedical examiner, and that Nittolo in fact made material misstatements to her when he failed to disclose his liver condition, when he denied he was taking medication for anxiety, and when he denied his history of sexually transmitted disease. (Ex. "E" to Pl. 12G Statement).

It is, in short, beyond doubt that the answers Nittolo provided in his medical exam were materially false and resulted in an independent basis for the rescission of his insurance contract. Therefore, even if one were to assume for the sake of this argument that Garber was negligent in writing down some information, his negligence could not have caused this rescission because Nittolo's mis-

statements to the paramedical examiner without doubt formed an adequate, independent basis for this rescission.

The compassion felt toward an individual with a disabling medical condition does not justify a different result or a disregard of clear precedent. The ludicrous excuses for Mr. Nittolo's failures, as argued by his attorney, are worth mentioning only as further confirmation of the lack of a genuine factual dispute: he didn't realize he was taking a prescription medicine (despite his numerous trips to the pharmacy to fill his prescription for valium); he didn't know his valium was prescribed for stress and anxiety, but just thought it was to calm him down, even though he described his condition as "anxiety" in his own deposition (Nittolo Dep. at 42); he had no idea his genital warts and herpes were sexually transmitted diseases; and—the best one of all—the paramedical examiner wasn't paying attention to his answers anyway because she was just flirting with him the whole time.

Defendant Nittolo's counsel, at oral argument, invited the court to visit a place he called "Realityville" in deciding this motion. This is a place where "real, ordinary people" are unfamiliar with such obscure medical jargon as "prescription drugs," "anxiety," and "sexually transmitted disease," where they think valium is as common as aspirin, and where they have no reason to know that elevated liver enzymes are a sign of liver disease even when told by a doctor. In Realityville, the argument goes, people usually certify and sign important documents without reading them, and professionals like insurance agents and nurses who have a duty to get things right manage to get everything wrong. In Realityville, people don't know their own incomes and when they give an estimate, it may be inflated by two or three times and still be correct. It seems that in Realityville, people are unable to take responsibility for their mistakes and they blame their problems upon whomever crosses their path.

The court declines the invitation to this bizarre place. Unfortunately for Mr. Nittolo's position, the law of Realityville does not apply. The law of New Jersey governs this case and compels judgment in favor of third-party defendant Garber and plaintiff Hartford.

### III. *Conclusion*

For the above reasons, summary judgment shall be granted to Hartford on its complaint seeking a rescission of the insurance policy and a declaratory judgment that the policy is null and void and will not cover Mr. Nittolo's disability claim. This result also calls for the dismissal of Mr. Nittolo's counterclaim to enforce the policy against Hartford. Summary judgment shall also be granted to Mr. Garber, requiring the dismissal of the third-party complaint filed against him by Mr. Nittolo.